IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. HUNTER,

    Plaintiff

vs.

WARDEN BRIAN BLEDSOE, et al.,
    Defendants

: CIVIL NO. 1:CV-10-0927
:
: (Judge Caldwell)

FILED
HARRISBURG, PA

AUG 0 9 2010

MEMORANDUM

I.   *Introduction*

    The pro se plaintiff, Steven Hunter, an inmate at USP-Lewisburg, is confined in the prison's Special Management Unit (SMU). He makes several constitutional claims concerning his treatment in the SMU. Plaintiff is proceeding in forma pauperis, so pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), we reviewed his twenty-page complaint for legal sufficiency.[1] We have decided that some claims survive this initial screening, and others fail to state a legally valid claim for relief. Some of the latter claims may be viable if Plaintiff provides additional allegations, so we will grant Plaintiff leave to file an amended complaint on those claims. Still other claims cannot

---

1.     Named in the Complaint are the following twenty-four defendants: Warden Bledsoe; SIS Perrin; Lt. Galletia; Counselor Lizardi; Unit Manager Brewer; the Case Manager Coordinator; Officer Anderson; the Regional Director: the Director of the BOP; United States Attorney General Eric Holder; Associate Warden, Custody; Associate Warden, Operations; Case Manager Zearski; Chief Psychologist; Counselor Shuck; Education Supervisor; Medical Administrator; Deputy Captain Snider; Lt. T. Johnson; Officer Kulago; Officer Hummer; Administrative Remedy Coordinator USP Lewisburg; and SIS Fosnot.

be saved by amendment, and those will be dismissed without leave to amend. If Plaintiff does file an amended complaint, and if he is going to handwrite it, he must handwrite in a printed fashion rather than use a cursive style.[2]

II.  *Standard of Review*

A complaint filed in forma pauperis may be dismissed if it is determined that the action is frivolous, malicious, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). The court must accept as true the factual allegations in the complaint and construe any inferences to be drawn from the allegations in the plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d. 1081 (2007)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)). Although detailed factual allegations are not required, *Twombly*, 550 U.S. at 93, 127 S.Ct. at 2200, the complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127

---

2.  Plaintiff's cursive handwriting is almost impossible to read.

2

S.Ct. at 1974. "[M]ore than labels and conclusions" are required. *Id.* at 555, 127 S.Ct. at 1964-65.

Pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson, supra,* 551 U.S. at 94, 127 S.Ct. at 2200. Pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

III. *Discussion*

    A. *Plaintiff Fails to State Claims for Denial of Access to the Administrative Remedy Process*

Plaintiff claims that Warden Bledsoe; the Associate Warden of Programs; the prison's Administrative Remedy Coordinator; the Regional Director; Unit Manager Brewer; Counselor Lizardi; and Case Manager Zearski conspired to deny him access to the prison's administrative remedy process. (Doc. 19, CM/ECF p. 9).[3] Plaintiff avers there was no response to more than fifty administrative remedy requests he made to Counselor Lizari, Unit Manager Brewer, Warden Bledsoe and others since June 7, 2010. (Doc. 19, Compl., CM/ECF pp. 9-10). He also avers that the BOP continues to ignore his complaints about staff misconduct at USP-Lewisburg, (id., p. 17), and that the Regional Director acts unfavorably on his complaints about staff misconduct and

---

3. Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

3

continues to ignore homemade administrative remedy forms despite being told that prison officials will not provide Plaintiff any official forms. (*Id.*, p. 17).

These claims fail for two reasons. First, conclusory and vague allegations will not support a conspiracy claim, see *Tindell v. Beard*, 351 F. App'x 591, 594 (3d Cir. 2009)(per curiam) (nonprecedential) (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)); *Adams v. Teamsters Local 115*, 214 F. App'x 167, 175 (3d Cir. 2007)(nonprecedential), and Plaintiff has presented only conclusory allegations of conspiracy to deprive him of access to the administrative remedy process. Second, and more importantly, prisoners do not, in any event, have a constitutional right to a prison grievance process. See *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007)(per curiam)(nonprecedential)(citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)). Therefore, these claims will be dismissed, and without leave to amend.[4]

    B.    *Plaintiff Fails to State a Claim for Single-Cell Status*

Plaintiff alleges that Warden Bledsoe; the Associate Warden of Programs; the Associate Warden of Operations; and the Associate Warden of Custody have been deliberately indifferent to his safety by ignoring his request for single-cell status. In support, Plaintiff avers he has: (1) a history of not having been able to share a cell with any of about twenty-four other inmates since being in the SMU; (2) been assaulted by at least three cellmates; and (3) an extensive history of an antisocial

---

4. We do note, however, these allegations would be relevant if the defendants were ever to present the defense of failure to exhaust administrative remedies.

4

personality that causes him to act out when celling with another inmate. (Doc. 19, CM/ECF pp. 10-11).[5]

Plaintiff has no constitutional right to a single cell, *Keeling v. Damiter*, No. 09-147, 2010 WL 678091, at *6 (M.D. Pa. Feb. 24, 2010), and neither past assaults upon him by cellmates nor his antisocial personality are valid bases for this court to require prison officials to give him single-cell status. That judgment should be left to prison administrators, who are in the best position to decide his housing status and whether he can live with any particular inmate. *See Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)("the task of prison administration is difficult, and . . . courts should afford deference to decisions made by prison officials, who possess the necessary expertise"); *DeFranco v. Wolfe*, 2010 WL 2762968, at *6 (3d Cir. 2010) (nonprecedential) (quoting *Rauser*). Thus, Plaintiff's claim for single-cell status will be dismissed, and without leave to amend.[6]

C. *Plaintiff Fails to State Claims Based On Verbal Harassment by Guards*

Plaintiff alleges that defendants Lt. Galletia and CO Kulago on several occasions made racial remarks to him, or other remarks about him, that sometimes

---

5. Plaintiff also alleges that on August 8, 2009, Lt. Galletia refused Plaintiff's request to move out of a double cell. (*Id.*, p. 12).

6. As we read this claim, it is not one seeking redress for the alleged past assaults by cellmates. To prevail on such a failure-to-protect claim, Plaintiff would have to allege facts, not just conclusions, indicating that the prison official knew that Plaintiff "face[d] a substantial risk of serious harm and disregard[ed] that risk" by placing him with the inmates who assaulted him. *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994); *see also Hamilton v. Leavy*, 117 F.3d. 742, 746 (3d Cir. 1997).

5

included threats.[7] Such remarks, if made, are unprofessional and offensive, but as a matter of law, they do not state a constitutional claim.

Verbal abuse or harassment are not civil-rights violations, *Mimms v. UNICOR*, 2010 WL 2747470, at *2 (3d Cir. 2010)(per curiam)(nonprecedential), even harassment that includes threats of violence. *See Herder v. Biesh*, No. 09-2470, 2010 WL 2766611, at *4 (M.D. Pa. July 13, 2010)(Caldwell, J.); *MacLean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995)(collecting cases); *Wright v. O'Hara*, 2002 WL 1870479 at *3 (E.D. Pa.). Nor is the use of racial slurs, as offensive as they are. *Simmons v. Mallick*, No. 10-739, 2010 WL 2079865, at *7-8 (M.D. Pa. April 21, 2010)

---

7. Specifically, Plaintiff alleges the following remarks were made:

    1. On May 7, 2009, Kulago threatened to write a false incident report on Plaintiff. (Doc. 19, p. 14).

    2. On or about July 15, 2009, Lt. Galletia submitted a written threat, indicating he would use excessive force on Plaintiff to accompany the team. (Id., p. 11).

    3. On November 11, 2009, Kulago called Plaintiff "a black rat." (*Id.*, p. 14).

    4. On March 10, 2010, Galletia told Plaintiff upon delivering an incident report, "I encourage the officers to write incident reports on your black ass since you like to file administrative remedies on staff." (*Id.*, p. 13).

    5. On June 15, 2010, Galletia told an inmate who had assaulted Plaintiff while Plaintiff was in hand restraints, "If I knew it was Hunter being assaulted I would of never have shot you with the pepper spray you could of whooped his ass (Hunter) good." (*Id.*, p. 13).

    6. On or about June 19, 2009, Lt. Galletia told Plaintiff, "I am going to see to it that your black ass stays in restraints until you turn blue black." (*Id.*, p. 11).

6

(magistrate judge report), approved, Simmons v. Mallick, 2010 WL 2079857 (M.D. Pa. May 21, 2010)(Caldwell, J.). Hence Plaintiff's claims based on alleged verbal harassment will be dismissed, without leave to amend.

> D. *Plaintiff Fails to State Claims for the Issuance of False Misconducts*

Plaintiff alleges that three false incident reports were filed against him: (1) one on July 17, 2009, by Lt. Galletia; one on August 8, 2009, by Lt. Galletia for an alleged assault on that date attempted by Plaintiff on his cellmate; and (3) one on August 8, 2009, by CO Kulago, stating he possessed a torn sheet and had attempted to assault another inmate. (Doc. 19, CM/ECF pp. 11, 13, 14).

A false misconduct charge does not itself qualify as an Eighth Amendment violation. *Booth v. Pence*, 354 F. Supp. 2d 553, 558-59 (E.D. Pa. 2005) (citing *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)). Similarly, no due process claim is stated when a prisoner alleges that misconduct charges were fabricated. *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002)(due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports). Accordingly, the three claims based on the allegedly false incident reports of July 17, 2009, and August 8, 2009, will be dismissed without leave to amend.

### E. Retaliation Claims Based on the Issuance of False Misconduct Reports

As noted above, a false misconduct report is not in itself a civil-rights violation, but if it was issued in retaliation for an inmate's exercise of a constitutional right, it is actionable. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials; and (3) there is a causal link between the exercise of the right and the adverse action. *Id.* at 333-34.

Plaintiff avers that three false incident reports were issued for retaliatory reasons. First, on December 7, 2009, defendant Officer Hummer issued a false misconduct "in retaliation for plaintiff['s] protest[ing]" that he wanted to "be move[d] to another cell to avoid a cell fight with plaintiff['s] cellmate . . . and/or from plaintiff['s] being further assaulted by his cellmate . . ." (Doc. 19, CM/ECF p. 14). Second, on March 10, 2010, defendant Anderson wrote a false incident report to retaliate against Plaintiff's "threat[ ] to file an administrative remedy on Officer Anderson." (*Id.*). Third, on April 14, 2010, defendant Lt. Johnson issued him a false incident report in retaliation for "plaintiff['s] refusal to cell with a known gang-related violent inmate in order to justify placing plaintiff in ambulatory restraints." (*Id.*, p. 15).

None of these three reports are actionable as a retaliation claim because none of them involved Plaintiff's exercise of a constitutional right. In the December 2009 and April 2010 claims, the allegedly retaliatory conduct stemmed from Plaintiff's

8

stating that he wanted a different cellmate. However, as noted, Plaintiff has no constitutional right to pick his cellmate or to a single cell.

Because both of these claims involve the potential for an assault from the cellmate, it could be argued that Plaintiff was invoking his Eighth Amendment right against suffering serious harm from his jailers, but to make such a claim Plaintiff would have to allege facts, not just conclusions, indicating that the prison officials knew at the relevant time that Plaintiff faced a substantial risk of serious harm from his cellmates and that they disregarded that risk by placing him with the cellmates. See note 5 supra. If this was Plaintiff's intent, we will grant him leave to amend these claims.

The March 2010 claim is closer to the mark because Plaintiff alleges that Officer Anderson retaliated against him because Plaintiff threatened to file a grievance against him. The filing of a grievance by a prisoner is protected by the First Amendment. *Kelly v. York County Prison*, 340 F. App'x 59, 61 (3d Cir. 2009)(per curiam)(nonprecedential); *Baker v. Williamson*, No. 07-2220, 2010 WL 1816656, at *5 (M.D. Pa. May 5, 2010)(Caldwell, J.). The difficulty here for Plaintiff is that he only threatened to file a grievance; he did not actually file one. Since Plaintiff's conduct did not actually involve the exercise of a constitutional right, he fails to satisfy the first element of a retaliation claim, and the March 2010 retaliation claim will be dismissed, without leave to amend.[8]

---

8. We have been unable to locate any the Third Circuit cases that hold the mere threat to file a prison grievance satisfies the first element of a retaliation claim. In *DeFranco v. Wolfe*, 2010 WL 2762968 at *6 n.2 (3d Cir. 2010)(nonprecedential), the Third Circuit bypassed the issue "whether the mere threat of a lawsuit against prison officials is a clearly established constitutional right" because the case could be decided on the causation prong
(continued...)

F.  *Claim that Captain Snider Was Racially Motivated in Failing to Adequately Investigate Hunter's Administrative Remedy Requests*

Plaintiff claims defendant Deputy Captain Snider, motivated by racism in part, responded to administrative remedy complaints "without a prompt investigation into [the] complaints." (Doc. 19, CM/ECF p. 16). These allegations fail to state a claim for two reasons. First, Plaintiff has failed to allege sufficient facts. He must allege the administrative remedies that defendant Snider handled in a discriminatory manner, the content of the grievances, and any facts supporting the allegation of racial bias. Second, Plaintiff must allege any injury he may have suffered from how Snider handled the grievances. We will grant him leave to amend this claim.[9]

G.  *Denial of Unlimited Free Postage and Photocopies for the Indigent Plaintiff*

Plaintiff avers that Unit Manager Brewer, Counselor Shuck, Counselor Lizzardi, the Assistant Warden of Programs, and Warden Bledsoe refuse to provide him with postage stamps and ordered him "to repay" for stamps if they have been

---

(...continued)
of a retaliation claim. See also *Bendy v. Ocean County Jail*, 341 F. App'x 799, 802 (3d Cir. 2009)(nonprecedential)(assuming, without deciding, that threatening to file a lawsuit was protected activity). In *Booth v. King*, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004), the district court held that an inmate's threat to sue was protected activity, but the inmate had also alleged that he had been retaliated against for filing prison grievances, so the court did not have to consider whether a mere threat to exercise a constitutional right was sufficient for a retaliation claim.

9.  Otherwise, as noted above, since a prisoner has no constitutional right to a grievance process, the mere fact that Snider failed to conduct a prompt investigation into the grievances does not state a claim.

10

provided to him, even though he is indigent. (Doc. 19, CM/ECF p. 16). Plaintiff avers that Warden Bledsoe, the Assistant Warden of Programs, the Education Supervisor, Unit Manager Brewer, and Counselor Lizzardi "refuse to provide Plaintiff free (no limited amount) of . . . copies of legal cases and related papers, including this action despite Plaintiff's being indigent." (*Id.*, pp. 16-17).

An inmate may be indigent and proceeding pro se but that does not entitle him to litigate his case without costs or at the expense of the BOP. In *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993), the Court stated that "[t]here is no provision in [28 U.S.C. § 1915] for the payment by the government of the cost of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." Notably, Plaintiff does not allege that the BOP is not allowing him to anticipate funds in his prison account to cover his postage or court-related copying expenses, but rather that they are making him pay for them at some later point when there are funds in his prison account. This claim will be dismissed, and without leave to amend.

### H. *Ambulatory Restraints*

Plaintiff makes the following claims about his placement in ambulatory restraints. First, on or about June 19, 2009, he was placed in ambulatory restraints and remained in restraints well over twenty-four hours, until about June 23, 2009, despite not being disruptive, with Warden Bledsoe having personal knowledge of his plight. (Doc. 19, CM/ECF p. 14). Second, on or about August 8, 2009, Plaintiff was

11

placed in ambulatory restraints, then placed in four-point restraints for no reason, with Warden Bledsoe having direct knowledge of this. (*Id.*, p. 15). Third, on or about April 16, 2010, Plaintiff was placed in ambulatory restraints for more than twenty-four hours by unknown officers, until April 18, 2010, despite Plaintiff's conduct not being disruptive. (*Id.*). Fourth, on or about April 14 and April 16, 2010, prison officials knowingly and intentionally placed ambulatory restraints on Plaintiff in a manner that affected Plaintiff's breathing and blood circulation. (*Id.*, pp. 15-16).

We conclude that these claims should survive an initial screening of the complaint.

I. *Alleged Assaults*

Plaintiff alleges the following assaults. First, since November 13, 2007, several prison officials have caused Plaintiff to be assaulted by at least three cellmates. (Doc. 19, CM/ECF p. 8). Second, on June 19, 2009, Lt. Galletia assaulted Plaintiff while he was in ambulatory restraints by spitting on him. (Id., p. 11). Third, on August 8, 2009, Lt. Galletia used excessive force when he used gas and shot-gun pepper spray on Plaintiff when he refused to allow his cellmate to have his hand restraints removed, with the intent to force Galletia to put Plaintiff in another cell. (*Id.*, p. 12). Fourth, on November 13, 2009, Plaintiff was assaulted by a cellmate whom Lt. Galletia had placed with Plaintiff despite Plaintiff's request not to be placed with this non-compatible inmate. (*Id.*, p. 13).

The first assault claim is deficient because it does not allege the prison officials involved, the facts supporting the averment that they caused Plaintiff to be

12

assaulted, when the assaults occurred, and the names of the cellmates who assaulted him. The third claim is deficient in failing to allege facts that show that Lt. Galletia used excessive force, especially since Plaintiff admits he caused a confrontation by refusing to allow his cellmate to have his restraints removed. The fourth claim is also deficient in failing to allege facts showing that Lt. Gallatia knew or should have known that the cellmate was "non-compatible" and that he would assault Plaintiff, as well as the name of the cellmate. Plaintiff will be granted leave to amend these claims.

Plaintiff's second claim is also deficient but cannot be cured by amendment. An assault by spitting is not enough for an Eighth Amendment claim. See McCullough v. Miller, No. 06-514, 2008 WL 4361254, at *7 (W.D. Pa. Sept. 24, 2008)(collecting cases), aff'd, 330 F. App'x 330 (3d Cir. 2009)(per curiam)(nonprecedential); Young v. Medden, No. 03-5432, 2006 WL 456274, at *21-22 (E.D. Pa. Feb. 23, 2006). It is immaterial that Plaintiff was in ambulatory restraints at the time. This claim will be dismissed, and without leave to amend.

J.  Requests for Transfer to Another Prison or SMU

Plaintiff avers that the Director of the BOP, the Regional Director, the Attorney General, Warden Bledsoe, the Associate Warden of Programs, the Associate Warden of Custody, SIS Perrin, the CMC and the Associate Warden of Operations have ignored his requests for transfer to another prison or to another SMU (essentially the same as a transfer to another prison). Plaintiff alleges the reason he needs the transfer is protection from a number of unnamed prison officials at Lewisburg. (Doc. 19, CM/ECF pp. 7-8).

13

Inmates have no constitutional right to confinement in any particular prison. *Mimms v. UNICOR*, 2010 WL 2747470, at *2 (3d Cir. 2010)(per curiam)(nonprecedential). However, as noted above, inmates do have an Eighth Amendment right to safety. Nonetheless, these allegations fail to state a claim because they are conclusory. Plaintiff will be granted leave to amend this claim by alleging the following: (1) the names of the prison officials he needs protection from; and (2) a description of the conduct of these officials (including time and place) that constituted a threat to his safety.

IV. *Conclusion*

The following claims will be dismissed without leave to amend: (1) the claims for denial of access to the administrative remedy process; (2) the claim for single-cell status; (3) the claim based on verbal harassment by the guards; (4) the three claims based on false incident reports of July 17, 2009, and August 8, 2009; (5) the March 2010 retaliation claim based on a allegedly false incident report issued by defendant Anderson: (6) the claim for denial of unlimited free postage and photocopies; and (7) the claim that Lt. Gallatia assaulted Plaintiff on June 19, 2009, by spitting on him.

The following claims will be dismissed but with leave to amend to make the necessary allegations, as discussed in the accompanying memorandum: (1) the December 2009 and April 2010 retaliation claims; (2) the claim that Deputy Captain Snider responded to administrative remedy complaints in a racist manner; (3) the claim

14

that since November 13, 2007, several prison officials have caused Plaintiff to be assaulted by at least three cellmates; that on August 8, 2009, Lt. Galletia used excessive force on Plaintiff; and that on November 13, 2009, Plaintiff was assaulted by a cellmate whom Lt. Galletia had placed with Plaintiff; and (4) the claim that Plaintiff should have been transferred for safety reasons.

Plaintiff will be granted twenty-one days to file an amended complaint. If Plaintiff fails to do so, this action will proceed only on the following claim: that Warden Bledsoe and unknown defendants unconstitutionally placed Plaintiff in ambulatory restraints on several occasions.[10]

Plaintiff is advised that the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Thus, he must include in his amended complaint his ambulatory restraint claims even though we found them sufficient for an initial screening. Further, because Plaintiff's cursive handwriting is illegible, if Plaintiff handwrites the amended complaint, Plaintiff must handwrite it in a printed fashion rather than use a cursive style. If Plaintiff uses a cursive style, the amended complaint will be dismissed.

---

10. We note that Plaintiff complained about other conditions in the SMU without saying that he had been affected by those conditions. We deal here only with claims of injury to Plaintiff.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 9, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. HUNTER,

    Plaintiff

vs.

WARDEN BRIAN BLEDSOE, et al.,

    Defendants

CIVIL NO. 1:CV-10-0927

(Judge Caldwell)

FILED
HARRISBURG, PA

AUG 0 9 2010

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## ORDER

AND NOW, this 9th day of August, 2010, upon review of the Complaint (doc. 19) under 28 U.S.C. § 1915(e)(2)(B)(ii), it is ordered that:

    1. The following claims are dismissed without leave to amend: (a) the claims for denial of access to the administrative remedy process; (b) the claim for single-cell status; (c) the claim based on verbal harassment by the guards; (d) claims based on false incident reports; (e) the March 2010 retaliation claim based on a allegedly false incident report issued by defendant Anderson; (f) the claim for denial of unlimited free postage and photocopies; and (g) the claim that Lt. Gallatia assaulted Plaintiff on June 19, 2009, by spitting on him.

    2 The following claims are dismissed but with leave to amend to make the necessary allegations as discussed in the accompanying memorandum: (a) the December 2009 and April 2010 retaliation claims; (b) the claim that Deputy Captain Snider responded to administrative remedy complaints in a racist manner; (c) the claims that since November 13, 2007, several prison officials have caused Plaintiff to be assaulted by at least three cellmates; that on August 8, 2009, Lt. Galletia used excessive force on Plaintiff; and that on November 13, 2009, Plaintiff was assaulted by a cellmate whom Lt. Galletia had placed with Plaintiff; and (4) the claim that Plaintiff should have been transferred for safety reasons.

3. Plaintiff is granted twenty-one days to file an amended complaint. If Plaintiff fails to do so, this action will only proceed on the claim against Warden Bledsoe and unknown defendants that Plaintiff was unconstitutionally placed in ambulatory restraints on four occasions.

4. The amended complaint must be complete in all respects and must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed.

5. If Plaintiff handwrites the amended complaint, Plaintiff must handwrite it in a printed fashion rather than use a cursive style. If Plaintiff uses a cursive style, the amended complaint will be dismissed.

/s/William W. Caldwell
William W. Caldwell
United States District Judge